DECISION
Before the Court is the appeal of Arthur Camp (plaintiff) from a decision of the Department of Human Services (hereinafter "DHS") denying funding through the Rhode Island Medical Assistance Program (Medicaid) for placement in an out-of-state rehabilitative facility. Jurisdiction of this Court is pursuant to R.I.G.L. 1956 (1993 Reenactment) § 42-35-15.
Facts/Travel
Plaintiff was involved in a motorcycle accident in October 1984 wherein he sustained severe and life-threatening injuries and head trauma. He was admitted to Rhode Island Hospital, where he remained for four months. From there he was transferred to the General Hospital in Cranston, where he remained for an additional four months. He was discharged to the care of his mother but returned to Rhode Island Hospital four to five days a week for therapy and to Kent County Mental Health for counseling on an outpatient basis. In October 1986, the plaintiff was enrolled at the Sargeant Rehabilitation Center. While attending the Sargeant Rehabilitation Center, it became necessary for the plaintiff to be admitted to Kent County Hospital for psychiatric evaluation and treatment, following which the plaintiff was admitted to Butler Hospital.
Additionally, the plaintiff resided at Oak Ridge Sheltered Care Facility for fifteen months, received therapy from Mediplex Rehabilitation Program in Newton, Massachusetts for three months, and spent fifteen months at New Medico Highwatch Facility in New Hampshire, where he was discharged in May 1990. These programs were funded by Blue Cross, which refused further funding due to lack of progress.
Since 1990, plaintiff has had multiple admissions to Butler Hospital for the purposes of adjusting medications and suppressing violent and aggressive behaviors. Between hospitalizations, and at the present, plaintiff resides in the home of his mother and stepfather.
The record reveals that plaintiff suffers significant executive cognitive defects which result in his displaying extremely inappropriate social behavior. He is often impulsive, aggressive and sexually intrusive. He is unable to gain insight into the appropriateness of his behavior or to control his impulses. In addition to these behavioral difficulties, plaintiff also exhibits significant motor deficits characterized by quadriparesis and ataxia. He is able to walk using a small based quad cane, and occasionally uses a wheelchair. As a result of these problems, the plaintiff requires constant supervision and has essentially become homebound. To aid plaintiff's mother and stepfather in his care, a personal care attendant comes to the house for 45 hours per week, which is paid for by Medicaid under a waiver.
Plaintiff's sole source of income is from Social Security in the form of Supplemental Security Income (hereinafter "SSI"). As an SSI recipient, plaintiff is automatically eligible for Medicaid benefits.
In February 1993, the plaintiff's mother, as his legal guardian, filed a prior authorization request for medical services with DHS for payment by Medicaid of plaintiff's placement in the Mentor Clinical Care Program ("Mentor") in Marshfield, Massachusetts which specializes in head injury services. DHS denied this request, stating that out-of-state hospital services were limited to acute care medical/surgical facilities, and that rehabilitative hospitals were excluded and not identified under the State Medicaid Plan as a covered service. Plaintiff appealed from that decision and an administrative hearing was held on June 8, 1993. On March 9, 1994, the hearing officer issued a written decision upholding DHS's denial of Medicaid funding. The plaintiff subsequently filed a timely appeal to this Court.
Standard of Review
The review of an agency decision by this Court is controlled by R.I.G.L. § 42-35-15(g) which provides:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswellv. George Sherman Sand Gravel Co., 120 R.I. 1981,424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency.Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). On review of the Superior Court's judgment, the Supreme Court determines whether legally competent evidence exists to support the decision of the Superior Court. RhodeIsland Public Telecommunications Authority, et al. v. RhodeIsland Labor Relations Board, et al., December 2, 1994, No. 93-268-M.P. at 20. The Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v.Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts ofInterests Commission, 509 A.2d at 458.
On appeal, plaintiff contends the following: Mentor qualifies as a mandatory service under the Rhode Island State Medicaid Plan (the "State Plan"); in the alternative, Mentor qualifies as an optional service under the State Plan; the services offered by Mentor are not available in Rhode Island and are medically necessary for the plaintiff; DHS has an affirmative duty under R.I.G.L. § 42-12-20 to provide funding to plaintiff for his placement at Mentor; and plaintiff is entitled to costs and attorney's fees under R.I.G.L. § 42-92-1 et. seq. This court will address these issues in seriatim.
I. Mandatory Services Under the State Plan
Medicaid is governed by Title XIX of the Social Security Act,42 U.S.C. § 1396 et. seq. Additionally, it is controlled by extensive regulations. See 42 C.F.R. Parts 431-498. States are not required to provide Medicaid. However, if they choose to provide Medicaid, they must comply with the federal statute and regulations. Each state which chooses to provide Medicaid must implement its own Medical Assistance Plan which lists the services that state will provide to eligible recipients. In Rhode Island, the Medicaid program is governed by the DHS Regulations contained in the DHS Manual, the State Medical Assistance Plan (State Plan), and R.I.G.L. § 40-8-1 et. seq.
The federal statute sets out a list of medical benefits which are mandatory and thus must be contained in a state's Medical Assistance Plan. See 42 U.S.C. § 1396d(a)(1)-(5), (17) and (21). These mandatory services include: in-patient hospital services (other than services in an institution for mental diseases); outpatient hospital services; laboratory and x-ray services; nursing facility services (other than services in an institution for mental diseases) for individuals 21 years of age or older; physicians' services; nurse-midwife services; and services furnished by a certified pediatric nurse practitioner or certified family nurse practitioner. 42 U.S.C. § 1396d(a) (1)-(5), (17) and (21). Any state plan must include reasonable standards for determining eligibility for and the extent of medical assistance under the plan which are consistent with the objectives of the federal statute. 42 U.S.C. § 1396a(a) (17).
Plaintiff contends that Mentor is eligible for Medicaid reimbursement under the State Plan as both a nursing facility and an intermediate care facility, mandatory services under the federal statute. A nursing facility is an institution which provides skilled nursing care for residents who require medical or nursing care, rehabilitation services for the rehabilitation of injured, disabled, or sick persons, or health-related care and services to persons who because of their mental or physical condition require care and services (above the level of room and board) which can only be provided to them through institutional facilities, but is not primarily for the care and treatment of mental diseases. 42 U.S.C. § 1396r(a), 42 C.F.R. § 440.40(a). A person qualifies for skilled nursing service under the State Plan if he or she requires the services of "professional or qualified technical health personnel such as registered nurses, licensed practical nurses, physical therapists, occupational therapists, speech pathologists, or audiologsts, etc. The facility must provide such services by or under the supervision of skilled nursing personnel." DHS Regulations, Section 301.4.
The testimony at the hearing supports the finding by the hearing officer that Mentor is not a skilled nursing facility. Wendy Bauer, Assistant Vice President for Head Injury Services at Mentor specifically testified that Mentor is not a hospital or a skilled nursing facility, but rather a group home setting. She further testified that the Supervised Living Program into which plaintiff would be placed has a permanent manager who is a speech pathologist and an experienced head injury professional, and clinical supervisors who are licensed social workers. In addition, there is a consulting neuropsychologist and a consulting medical director who is a psychiatrist. The main focus of the Mentor program is to rehabilitate persons with head injuries. Mentor does not provide skilled nursing care to its residents, but rather, according to Ms. Bauer's testimony, provides transitional rehabilitation and long-term maintenance by social workers to give the residents structure and meaning in their daily lives. Thus the hearing officer's determination that Mentor is not a skilled nursing facility is supported by substantial evidence on the record.
An intermediate care facility is one the provides, on a regular basis, health-related services to individuals who do not require hospital or skilled nursing facility care but require, because of a mental or physical condition, services that are above the level of room and board and can be made available only through institutional facilities. 42 C.F.R. § 440.150(a). A resident of an intermediate care facility is a person who needs professional services to maintain, improve, or protect their health or to lessen disability or pain under the direction of a practitioner of the healing arts, and is under care and supervision 24 hours a day. 42 C.F.R. § 435.1009. DHS regulations provide for care in an intermediate care facility — level 2 if the patient can ambulate without personal assistance, but requires direction with the activities of daily living, and those needs cannot be met in the community. DHS Regulations Section 301.4.
The Mentor program into which plaintiff would initially be placed is the Supervised Living Program which provides 24-hour supervision of the residents. The program provides health-related services including psychological counseling and provides direction with the activities of daily living. Mentor provides services above the level of room and board which can be made available only through an institutional facility such as Mentor's.
Further, plaintiff fits the profile of a resident of such a facility. Dr. James Duffy, the plaintiff's treating physician, testified that plaintiff has demonstrated that he does not have the ability to live independently and that he requires constant supervision. Dr. Duffy further testified that unless plaintiff gets a long-term treatment plan that includes round-the-clock supervision and behavioral programs, it is likely that plaintiff will suffer some event that will be detrimental to him and his family. Additionally, Dr. Duffy testified that rehabilitation by itself would not be enough as once plaintiff leaves the structured environment, he forgets much of his learned behaviors. Once plaintiff reaches the needed level of rehabilitation, it will need to be maintained in a predictable, consistent, structured environment or he will relapse and forget many of the skills he learned through his rehabilitation.
Plaintiff's mother gave extensive testimony regarding plaintiff's aggressive and sexually disinhibited behaviors, as well as the extent of supervision that he requires. She testified that while plaintiff currently is being supervised by a personal care attendant 40 to 45 hours per week, he needs 24-hour care. She noted that plaintiff's physical size of 6'2" and 190 pounds makes it extremely difficult for her to control him in certain situations. She has had to call the police to the house on several occasions because plaintiff's aggressive behavior had become unpredictable and impossible to control.
Accordingly, the Supervised Living Program at Mentor falls within the Intermediate Care Facility — Level 2 services of the Rhode Island State Plan. The only testimony received during the hearing from DHS regarding the classification of services was from Frank Spinelli, Senior Medical Care Specialist with DHS, who testified that he looked at the fee schedules of DHS to see if supporting group programs were covered and found that they were not. He testified that DHS next looked to see if Mentor could be classified as a hospital so it would be eligible for in-patient hospital services, but concluded that Mentor was not a hospital. No reasons were given as to why Mentor did not fit into either of these categories. In addition, Mr. Spinelli sent a memorandum to the hearing officer, dated June 29, 1993, which again stated that Mentor's services are not currently covered under the Rhode Island State Plan, but giving no explanation as to why the services did not fit under the State Plan.
A review of the record indicates that the hearing officer's decision was not supported by substantial evidence on the record and was affected by an error of law. The hearing officer sustained DHS's denial of benefits, giving as his reasons that he had considered Mr. Spinelli's testimony that the services provided by Mentor are not listed in the State Plan, that the initial program at Mentor recommended for plaintiff is not covered by Massachusetts Medical Assistance, that plaintiff is currently in receipt of 45 hours per week of personal care attendant services under a waiver program through the State Plan, and that there are no provisions in the State Plan where plaintiff could have the services paid for under a waiver program.
As each state Medicaid plan is unique, the fact that Mentor's services are not covered by Massachusetts Medicaid does not afortiori mean that they are not covered under Rhode Island's Medicaid program. Further, Ms. Bauer, the representative from Mentor, testified that the reason the particular program into which plaintiff is to be placed does not receive Medicaid reimbursement from Massachusetts is that the rate of reimbursement is too low for the services rendered. She additionally testified that other services offered by Mentor are funded by Massachusetts Medicaid, as well as being funded by Medicaid programs in 8 other states. The hearing officer's determination that the services offered by Mentor do not fit into any category in the State Plan when, in fact, the services do fit within the Intermediate Care Facility — Level 2 category thus constituted an error of law.
II. Optional Services Under the State Plan
Plaintiff contends that Mentor is eligible for Medicaid reimbursement under the optional services of rehabilitation services, personal care services, or home/community based waiver program services.
The federal Medicaid statute contains a listing of medical benefits which are optional and thus may be contained in a state's Medicaid plan if the state opts to include that service.See 42 U.S.C. § 1396d(a)(6)-(16), (18)-(20) and (22)-(24). If a state chooses to offer one of the options, it must comply with the federal statute and regulations in implementing those services. Meyers by Walden v. Reagan, 776 F.2d 241 (8th Cir. 1985); Eder v. Beal, 609 F.2d 695 (3rd Cir. 1979). Rhode Island has chosen to provide such optional services as: rural health clinic services; physical therapy; occupational therapy; speech pathology; audiology services; pharmacy services; surgical appliances and prosthetic devices; podiatry services; community mental health services; substance abuse services; optometric services and rehabilitative services. State Plan Section 3.1 and Attachment 3.1-A.
Rehabilitative services are:
 ". . . diagnostic, screening, preventive, and rehabilitative services, including any medical or remedial services (provided in a facility, a home, or other setting) recommended by a physician or other licensed practitioner of the healing arts within the scope of their practice under State law, for the maximum reduction of physical or mental disability and restoration of an individual to the best possible functional level."
42 U.S.C. § 1396d(a)(13). See also 42 C.F.R. § 440.130(d).
The State Plan lists 8 programs under the heading of rehabilitative services, one of which is community mental health services. The State Plan defines community mental health services as:
 ". . . those services provided with the primary purpose of diagnosis, treatment, or rehabilitation of a mental disorder, or a dysfunction related to a mental disorder, limited to [the programs listed]. All services are reimbursable only when provided in accordance with a treatment plan approved by a licensed physician or other licensed practitioner of the healing arts . . ."
State Plan Attachment 3.1-A, page 6.1. One category listed under community mental health services is residential treatment programs, which:
 ". . . consist of the provision of a twenty-four hour supervised treatment program that is designed to provide the necessary support and address the treatment, rehabilitation and individual care needs of mentally ill individuals residing in facilities with less than 17 beds. Services include, but are not limited to, counseling (individual, group and family), medication (education, administration and monitoring), and skill assessment and development."
State Plan Attachment 3.1-A, page 6.3a.
An individual is considered to have a mental illness if he or she meets certain requirements on diagnosis, level of impairment and duration of illness. 42 C.F.R. § 483.102(b)(1). The individual's mental disorder must be diagnosable under the Diagnostic and Statistical Manual of Mental Disorders. Id. In addition, the mental disorder is "[a] schizophrenic, mood, paranoid, panic or other severe anxiety disorder; somatoform disorder; personality disorder; other psychotic disorder; or another mental disorder that may lead to a chronic disability . . ." Id. The disorder must result in functional limitations in major life activities, causing the individual to have serious difficulty with interpersonal functioning, concentration and persistence, and adapting to change. Id. Furthermore, the individual's treatment history must indicate that he or she has either received psychiatric treatment more intensive than outpatient care more than once in the past two years, or due to the mental disorder has experienced an episode of significant disruption to the normal living situation within the last two years which required supportive services or which resulted in intervention by housing or law enforcement officials. Id.
There was substantial evidence on the record to determine that Mentor's services fall under the rehabilitative services option of the State Plan. Mentor's Supervised Living Program is a 24-hour supervised treatment program which, according to Wendy Bauer's testimony, consists of a series of homes with two or three individuals per home. Ms. Bauer testified that plaintiff would receive counseling, education regarding his medication and skill development so he will be able to control his aggressiveness and sexual disinhibition.
The Diagnostic and Statistical Manual of Mental Disorders ("DSM") lists as a mental disorder "personality change due to a general medical condition." Diagnostic and Statistical Manual of Mental Disorders § 310.1 (4th ed. 1994). The essential feature of this classification is a persistent personality disturbance which is due to the direct physiological effects of a general medical condition. Id. Common manifestations of the personality change include poor impulse control, outbursts of aggression, lack of judgment and disinhibition. Id. A variety of neurological and other general medical conditions may cause personality changes, including head trauma. Id.
Plaintiff's behavioral problems resulting from his head trauma place him in this category of mental disorders. Mentor's program specializes in the treatment and rehabilitation of head trauma victims who have these types of behavioral problems and therefore need help with the activities of daily living.
As there was substantial evidence on the record that Mentor's services fall under the rehabilitation option of the State Plan, the hearing officer made an error of law when he ruled that Mentor's services did not fall under any category of the State Plan. As the Court has found that plaintiff presented to DHS substantial evidence of two categories of services under which Mentor's program falls, it will not address plaintiff's arguments that the program also falls under the personal care services option or the home/community based waiver program under the State Plan.
III. Requirements for Rhode Island Medicaid Funding forOut-of-State Services
Plaintiff argues that he has met all of the requirements for Rhode Island Medicaid to fund his placement at Mentor. An individual is permitted a free choice of medical providers.42 U.S.C. § 1396a(a) (23); State Plan Section 4.10. This free choice allows payment for services outside the state of residence if certain requirements are met. 42 C.F.R. § 431.52; DHS Regulations Section 301.5A. A resident of Rhode Island will receive payment for out-of-state services if: (1) the services required are not available within the State of Rhode Island; (2) a physician has determined that the services are medically necessary; and (3) the services are listed within the scope of services of the State Plan and prior authorization has been granted. DHS Regulations Section 301.5A.
Dr. Duffy testified that plaintiff requires the services offered by Mentor before he suffers some event that will be detrimental to him and his family. He further testified that plaintiff does not have the ability to live independently and that he requires constant supervision. In addition, Dr. Duffy testified that there are no facilities in the State of Rhode Island that are capable of giving plaintiff those services he requires.
Wendy Bauer also testified that there were no facilities in Rhode Island that would meet plaintiff's needs. Ms. Bauer added that Mentor receives many inquiries from people within the state of Rhode Island regarding its services because there is no comparable service in Rhode Island. At the hearing, DHS presented no evidence that the services which plaintiff requires are available in Rhode Island. As the agency had before it evidence that the services plaintiff requires are not available within the State of Rhode Island, that Dr. Duffy has determined that the services are medically necessary, and the services fall under the intermediate care facility — level 2 and rehabilitative services categories of the State Plan, DHS's decision to deny plaintiff funding through the Rhode Island Medical Assistance Program was clearly erroneous.
Plaintiff argues that, in the alternative to plaintiff receiving funding through the Rhode Island Medical Assistance Program, DHS has an affirmative duty under R.I.G.L. § 42-12-20 to provide funding to plaintiff for his placement at Mentor. The Court need not address this issue as it has found that DHS's decision to deny plaintiff Medicaid funding was clearly erroneous.
IV. Attorney's Fees and Costs
Plaintiff seeks attorney's fees and costs under the Equal Access to Justice Act ("E.A.J.A."), R.I.G.L. 1956 (1993 Reenactment) § 42-92-3, E.A.J.A. was propounded to mitigate the burden of arbitrary and capricious decisions by administrative agencies and to encourage individuals to appeal such decisions.Taft v. Pare, 536 A.2d 888, 892 (R.I. 1988). An award of attorney's fees will not be granted if the agency was substantially justified in its decision. Krikorian v. D.H.S.,606 A.2d 671, 675 (R.I. 1993). A decision is substantially justified if it has a "reasonable basis in law and fact." R.I.G.L. 1956 (1993 Reenactment) § 42-92-2 (f). Our Supreme Court has further defined substantial justification as encompassing agency decisions which are" clearly reasonable, well founded in law and fact, solid though not necessarily correct." Krikorian,supra at 675.
DHS's decision in this case was clearly erroneous in view of the competent evidence contained in the whole record and was affected by error of law. The record contained evidence that Mentor's services fit under both the intermediate care facility level 2 and rehabilitation option categories of the State Plan. The record also contained evidence that Mentor's services were medically necessary for the plaintiff. Additionally, the record was devoid of any evidence that there are comparable services available within the State of Rhode Island. Thus DHS's decision that Rhode Island Medicaid not be required to fund plaintiff's placement at Mentor was neither founded in law nor founded in fact. As this Court finds that DHS's decision was not substantially justified, plaintiff's request for reasonable litigation expenses is granted.
Accordingly, the Court finds that the decision of the hearing officer as to Rhode Island Medicaid funding of plaintiff's placement at Mentor is hereby reversed. This Court also grants the plaintiff's request for reasonable litigation expenses pursuant to R.I.G.L. § 42-92-3, for which counsel shall seek attorney's fees on the appropriate calendar.
Counsel shall prepare the appropriate order for entry.